**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| STATE OF TEXAS, et al.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, et al.<br><br>Respondents. | No. 24-1054<br><br>(and consolidated cases) |

On Petition for Review of Final Action of the
United States Environmental Protection Agency

**MOTION FOR LEAVE TO INTERVENE IN SUPPORT OF
RESPONDENTS**

ROB BONTA
Attorney General of California
EDWARD H. OCHOA
TRACY L. WINSOR
Senior Assistant Attorneys General
DENNIS L. BECK, JR.
GARY TAVETIAN
Supervising Deputy Attorneys
General

KAVITA LESSER
KATHERINE GAUMOND
STACY LAU
CAITLAN MCLOON
Deputy Attorneys General
300 S. Spring Street
Los Angeles, CA 90013
Telephone: (213) 269-6605
Email: Kavita.Lesser@doj.ca.gov
*Attorneys for the State of California*

(additional counsel on signature pages)

Pursuant to Federal Rule of Appellate Procedure (FRAP) 15(d) and Circuit Rule 15(b), the State of California[1] and the additional undersigned states (collectively, Movant-Intervenor States) hereby move to intervene in the above-captioned case in support of Respondents the United States Environmental Protection Agency (EPA) and Administrator Michael S. Regan.

Petitioners challenge EPA's final rule entitled "Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review," published at 89 Fed. Reg. 16,820 (Mar. 8, 2024) (Final Rule). The Final Rule updates and strengthens limits on air pollutants from new and modified sources in the oil and natural gas industry pursuant to section 111(b) of the Clean Air Act, 42 U.S.C. § 7411(b), and establishes the first nationwide emission guidelines requiring states to limit greenhouse gas emissions—specifically methane—from existing oil and gas sources pursuant to section 111(d) of the Act, *id.* § 7411(d). EPA expects that the Final Rule will reduce approximately 58 million tons of methane emissions, 16 million tons of smog-producing volatile organic compounds, and 590,000 tons of air toxics from 2024 to 2038. 89 Fed. Reg. at 16,836.

---

[1] Counsel for the State of California represents, pursuant to D.C. Circuit Rule 32(a)(2), that the other parties listed in the signature blocks below consent to the filing of this motion.

Movant-Intervenor States have a compelling interest in defending the Final Rule as a means of furthering their goal of preventing and mitigating climate change harms in their jurisdictions, as well as protecting their residents and communities from other harmful air pollution. These sovereign and quasi-sovereign interests of the States are distinct from Respondents' interests and not adequately represented by any party. Movant-Intervenor States thus satisfy the requirements for intervention and respectfully request that the Court grant this motion.[2]

Before filing this motion, counsel for the State of California contacted the parties for their position on this motion. Counsel for Respondents took no position, counsel for Petitioners in Case No. 24-1054 do not oppose, and counsel for Petitioners in Case No. 24-1059 took no position on the motion.

## BACKGROUND

### I.  STATUTORY AND REGULATORY BACKGROUND

Clean Air Act section 111 requires EPA to limit pollution from any source category that EPA determines "causes, or contributes significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7411(b)(1)(A). The statute refers to these emission limits as "standards of

---

[2] Movant-Intervenor States seek to intervene in all cases that may be filed challenging the Final Rule. *See* D.C. Cir. Rule 15(b).

performance," defined as "standard[s] for emissions of air pollutants which reflect[] the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any nonair quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated." *Id.* § 7411(a)(1).

Section 111(b) requires standards of performance for new, reconstructed, and modified stationary sources. *Id.* § 7411(b)(1)(B). Once EPA establishes a performance standard for new stationary sources, under Section 111(d) it must issue emission guidelines to control certain types of air pollutants—those not regulated as criteria or hazardous air pollutants—from existing sources in the same category. *See id.* § 7411(d)(1). Although EPA promulgates the Section 111(b) standards of performance that apply to new sources, states with designated facilities establish standards of performance for existing sources under section 111(d). *Id.* Those standards are informed by emission guidelines that sets forth EPA's determination of the best system of emission reduction for the source category and the degree of emission limitation achievable through applying the best system. *West Virginia v. EPA*, 142 S. Ct. 2587, 2601-02 (2022). Section 111(d) also directs that EPA allow states, in establishing a standard of performance for a particular source, to take into account a source's remaining useful life and other factors. 42 U.S.C. § 7411(d)(1).

In 1979, EPA listed crude oil and natural gas production under Clean Air Act section 111 as a source category that contributes significantly to air pollution that may reasonably be anticipated to endanger public health or welfare.[3] In 1985, EPA promulgated a new source performance standard for the oil and natural gas source category that regulated emissions of volatile organic compounds and sulfur dioxide.[4] In 2012, EPA updated the new source performance standard for several oil and natural gas-related operations not previously covered ("2012 Rule").[5] In 2016, EPA issued its first new source performance standards directly regulating methane emissions from the oil and natural gas industry ("2016 Rule").[6] The 2016 Rule triggered EPA's requirement under section 111(d) of the Clean Air Act to promulgate methane emission guidelines for existing oil and natural gas sources. *See* 42 U.S.C. § 7411(b), (d). In September 2020, EPA published two rules that amended the 2012 Rule and the 2016 Rule by eliminating or reducing certain monitoring obligations, rescinding the regulations applicable to the transmission

---

[3] *See* Priority List and Additions to the List of Categories of Stationary Sources, 44 Fed. Reg. 49,222 (Aug. 21, 1979).

[4] Standards of Performance for New Stationary Sources, Equipment Leaks of VOC from Onshore Natural Gas Processing Plants, 50 Fed. Reg. 26,122 (June 24, 1985); Standards of Performance for New Stationary Sources, Onshore Natural Gas Processing Plants, SO2 Emissions, 50 Fed. Reg. 40,158 (Oct. 1, 1985).

[5] Oil and Natural Gas Sector: New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants Reviews, 77 Fed. Reg. 49,490 (Aug. 16, 2012).

[6] Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources, 81 Fed. Reg. 35,824 (June 3, 2016).

and storage segment, and rescinding the methane requirements for the industry's production and processing segments.[7]

## II.  THE FINAL RULE

The Final Rule updates and strengthens the new source performance standards for methane and volatile organic compounds from new, modified, and reconstructed sources in the oil and natural gas industry. For example, the Final Rule requires all oil and gas well sites, centralized production facilities, and compressor stations to be routinely monitored for leaks; phases out routine flaring of natural gas from new oil wells; provides a one-year phase-in for zero-emissions from new process controllers and pumps; requires storage tanks to reduce emissions by 95 percent; and establishes emission standards for dry seal compressors, which were not previously regulated. 89 Fed. Reg. at 16,830–33. The Final Rule allows owners and operators flexibility to utilize a variety of advanced methane monitoring technologies to detect leaks at applicable sites. *Id*. at 16,825.

The Final Rule also includes emission guidelines for states to follow in developing, submitting, and implementing state plans to establish performance standards for methane emissions from existing sources. *Id*. at 16,829. Given that

---

[7] Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Review, 85 Fed. Reg. 57,018 (Sept. 14, 2020); Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources Reconsideration, 85 Fed. Reg. 57,398 (Sept. 15, 2020).

many of the control measures available to reduce methane emissions from existing sources are the same as those control measures to reduce emissions from new, modified, and reconstructed sources, the presumptive standards for existing sources are "very similar if not the same" as the performance standards for new sources. *Id*. at 16,995. The Final Rule also gives States flexibility to leverage their state programs "to achieve the requisite emissions limitation through the aggregate reductions from their sources." *Id*. at 17,002. States must develop and submit their plans to EPA within 24 months after the effective date of the Final Rule. *Id*. at 17,010.

## III. MOVANT-INTERVENOR STATES HAVE LONG ADVOCATED FOR THE FINAL RULE

Movant-Intervenor States have participated extensively in the regulatory and judicial proceedings leading to EPA's adoption of the Final Rule. Following promulgation of the 2016 Rule, challenges were filed in the D.C. Circuit and several of our States intervened in support of EPA to defend the 2016 Rule.[8] Many of our States also sued EPA in the United States District Court for the District of Columbia for unreasonably delaying the issuance of guidelines limiting methane emissions from existing sources in the oil and natural gas sector.[9] Many of our States challenged EPA's attempts in 2020 to amend the 2012 Rule and 2016

---

[8] *See North Dakota v. EPA*, No. 16-1242 (D.C. Cir.), ECF 1651602.
[9] *See New York, et al. v. Pruitt, et al.,* No. 18-773 (D.D.C.).

Rule.[10] Finally, many of our States submitted detailed comments to EPA on the proposed standards at issue in these consolidated cases.[11]

## LEGAL STANDARD

FRAP 15(d) authorizes intervention in circuit court proceedings reviewing agency actions. A party seeking such intervention must file a motion containing "a concise statement of interest of the moving party and the grounds for intervention," "within 30 days after the petition for review." *Id*. In determining whether to grant intervention motions, this Court draws on the policies underlying Federal Rule of Civil Procedure (FRCP) 24. *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997). Under FRCP 24, courts require a party requesting intervention as of right to satisfy four criteria:

> 1) timeliness of the application to intervene; 2) a legally
> protected interest; 3) that the action, as a practical matter,
> impairs or impedes that interest; and 4) that no party to the
> action can adequately represent the potential intervenor's
> interest.

*Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015); *see also Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232–33 (D.C. Cir. 2018) (looking "to the timeliness of the motion to intervene and whether

---

[10] *See California, et al., v. Regan, et al.,* No. 20-1357 (D.C. Cir.); *California, et al., v. Regan, et al.,* No. 20-1367 (D.C. Cir.).
[11] Comments by State of California, et al., (Jan. 31, 2022), EPA-HQ-OAR-2021-0317-1267; Comments by State of California, et al., (Feb. 13, 2023), EPA-HQ-OAR-2021-0317-2410.

the existing parties can be expected to vindicate the would-be intervenor's interests").

A court may also grant permissive intervention when a movant makes a "timely application" and the "applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(1); *see EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998).

## ARGUMENT

I. **MOVANT-INTERVENOR STATES ARE ENTITLED TO INTERVENTION AS OF RIGHT**

A. **Movant-Intervenor States Have Article III Standing and Legally Protected Interests That Could Be Impaired if the Petition Is Granted**

The standing inquiry for an intervening-defendant is the same as for a petitioner: the intervenor must show injury in fact, causation, and redressability. *Crossroads Grassroots*, 788 F.3d at 316. Movant-Intervenor States meet all three factors.

This Court's "cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots*, 788 F.3d at 317. Although Petitioners have not yet identified in court filings any specific portion of the Final Rule they claim is unlawful, Petitioners' rulemaking comments and public statements indicate that they will likely challenge EPA's

legal authority to regulate methane emissions from the oil and natural gas industry under the Clean Air Act and will seek vacatur of the Final Rule.[12] As detailed below, the Final Rule will provide several benefits to Movant-Intervenor States that would be lost if Petitioners were to succeed in their challenge.

*First*, the Final Rule will achieve significant reductions in climate-damaging methane emissions from the oil and natural gas sector and thus prevent or mitigate climate-change-related harms to our States. Methane is a potent greenhouse gas that has eighty-three times the warming impact of carbon dioxide for the first two decades after release and approximately thirty times the warming impact over a one hundred-year timeframe. 89 Fed. Reg. at 16,843. "Indeed, one third of the warming due to [greenhouse gases] that we are experiencing today is due to human emissions of methane." *Id*. Moreover, the oil and natural gas sector is the largest industrial emitter of methane in the United States. *Id*. at 16,823. Thus, the Final

---

[12] *See, e.g.*, Comments by the State of Texas, et al. (Jan. 31, 2022), EPA-HQ-OAR-2021-0317-0790; Press Release, "Attorney General Ken Paxton Sues Biden Administration to Stop New Radical Emissions Rule" (March 8, 2024) (Texas AG Press Release), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-biden-administration-stop-new-radical-emissions-rule; Press Release, "Drummond Leads Effort Challenging EPA's New Methane Emissions Rule" (Mar. 15, 2024) (Oklahoma AG Press Release), https://www.oag.ok.gov/articles/drummond-leads-effort-challenging-epa%E2%80%99s-new-methane-emissions-rule#. Movant-Intervenor States reserve the right to provide additional evidence and arguments in support of their standing after Petitioners identify the aspects of the Final Rule that they are challenging (and the basis of their standing to pursue those challenges).

Rule will help prevent and mitigate harms that climate change poses to human health and the environment. Movant-Intervenor States have a demonstrated, legally protected sovereign and quasi-sovereign interest in protecting their territory and residents from harmful pollution, including greenhouse gases, that contribute to climate change and its attendant, potentially catastrophic harms. *See Massachusetts v. EPA*, 549 U.S. 497, 521-23 (2007). If Petitioners succeed in vacating the Final Rule, Movant-Intervenor States and their residents would lose the benefits of the Final Rule's significant greenhouse gas reductions.

*Second*, the Final Rule will provide significant health and environmental benefits from a reduction in volatile organic compounds and other hazardous pollution that worsen our air quality and harms our residents' health, especially in overburdened communities.[13] The Final Rule will thus reduce the regulatory and financial burdens on state health and environmental programs and improve the health of our residents and natural resources. Given that emissions of volatile organic compounds also contribute to nonattainment of national ambient air quality

---

[13] EPA projects the Final Rule to reduce 16 million tons of volatile organic compounds, and 590,000 tons of air toxics (such as benzene) from 2024 to 2038. 89 Fed. Reg. at 16,836. Volatile organic compounds are a main precursor to the formation of ground-level ozone. *Id*. at 16,841. Exposure to elevated levels of ozone can cause coughing, throat irritation, lung tissue damage, and aggravation of existing conditions, such as asthma, bronchitis, heart disease, and emphysema. 80 Fed. Reg. 65,292, 65,302–11 (Oct. 26, 2015). Exposure to benzene is known to cause cancer and other adverse health effects. 89 Fed. Reg. at 16,841.

standards for ozone, a successful challenge to the Final Rule could impede our States' ability to meet our obligations under section 110 of the Clean Air Act. *Cf. West Virginia v. EPA*, 362 F.3d 861, 868 (D.C. Cir. 2004) (EPA action that makes it more onerous for state to address pollution causes cognizable injury to state).

These benefits to Movant-Intervenor States are "directly traceable" to the Final Rule and Movant-Intervenor States "can prevent the[se] injur[ies] by defeating" Petitioners' challenge. *Crossroads Grassroots*, 788 F.3d at 316. The Movant-Intervenor States thus meet all three standing requirements.

For the same reasons, Movant-Intervenor States also meet the requirements under FRCP 24(a) for legally protected interests that may be impaired or impeded by this litigation. As this Court has observed, "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). As discussed above, if Petitioners are successful in challenging the Rule, Movant-Intervenor States' interests in pollution reductions and climate mitigation will be impaired. Movants thus satisfy the interest requirements for intervention as of right under FRCP 24(a), as well as the requirements for Article III standing.

## B. Movant-Intervenor States' Interests Are Not Adequately Represented in This Case

Movant-Intervenor States meet the additional elements of timeliness and inadequate representation of interests to be able to intervene as of right.

First, this motion is timely. FRAP 15(d) provides that a party seeking intervention must do so "within 30 days after the petition for review is filed." Petitioners in Case No. 24-1054 filed this case on March 8, 2024. This motion is thus within the 30-day period provided by FRAP 15(d).

Second, no existing party in this case can vindicate or adequately address Movant-Intervenor States' interests. *Old Dominion*, 892 F.3d at 1232-33; *see also* Fed. R. Civ. P. 24(a) (considering whether "existing parties adequately represent" the would-be intervenor's interests). The requirement is "not onerous," and a "movant ordinarily should be allowed to intervene unless it is clear that" existing parties "will provide adequate representation." *Crossroads Grassroots*, 788 F.3d at 321. "[G]eneral alignment" between would-be intervenors and existing parties is not dispositive. *Id.*

Movant-Intervenor States more than meet this "minimal burden." *Id*. Although Movant-Intervenor States would be joining EPA in defending the Final Rule in the litigation, our interests are distinct because the Final Rule directly regulates states and imposes obligations on states that it does not impose on EPA itself. Specifically, while EPA has "the primary regulatory role in Section 111(d)," in applying those EPA regulations it is "the States [who] set the actual rules governing existing [sources]." *See West Virginia*, 597 U.S. at 710.

Movant-Intervenor States also have sovereign and quasi-sovereign interests in protecting state lands, infrastructure, and resources from climate change and attaining or maintaining national ambient air quality standards. These state sovereign interests are distinct from EPA's interests in promulgating and defending the Final Rule, even if Movant-Intervenor States and EPA are generally aligned in contending that the petitions should be denied. As a result, EPA and Movant-Intervenor States may choose to advance different arguments or make different strategic choices in this litigation. Movants therefore satisfy this final requirement for intervention as of right.

## II. ALTERNATIVELY, MOVANT-INTERVENOR STATES ARE ENTITLED TO PERMISSIVE INTERVENTION

Movant-Intervenor States also satisfy the requirements for permissive intervention. Courts may "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" if the motion is timely and intervention will not "unduly delay or prejudice the rights of the original parties." Fed. R. Civ. P. 24(b)(1)(B), (3). As stated, this motion is timely, and Movant-Intervenor States' intervention at this early stage will not cause undue delay or prejudice.

Moreover, as evidenced by our comments in the rulemaking, Movant-Intervenor States have developed extensive arguments on many of the same issues that Petitioners anticipate raising in their challenge, such as EPA's legal

justification for the regulation of methane and the inclusion of the natural gas transmission and storage segment in the source category.[14] The claims and defenses of Movant-Intervenor States thus share common questions of law and fact with the petitions, which will likely seek to attack the Final Rule on these same issues.[15]

---

[14] *See* Comments by State of California, et al., (Jan. 31, 2022), EPA-HQ-OAR-2021-0317-1267; Comments by State of California, et al., (Feb. 13, 2023), EPA-HQ-OAR-2021-0317-2410.

[15] *See* Comments by State of West Virginia, et al., (Jan. 31, 2022), EPA-HQ-OAR-2021-0317-0790; Comments by State of West Virginia, et al., (Feb. 14, 2023), EPA-HQ-OAR-2021-0317-2292; Comments by Texas Commission on Environmental Quality and Railroad Commission of Texas (Feb. 1, 2022), EPA-HQ-OAR-2021-0317-0763.

**CONCLUSION**

For the foregoing reasons, Movant-Intervenor States respectfully request that this Court grant them intervention as of right or, in the alternative, permissive intervention.

Dated:  March 18, 2024         Respectfully submitted,

FOR THE STATE OF CALIFORNIA

ROB BONTA
Attorney General of California

*/s/ Kavita Lesser*
EDWARD H. OCHOA
TRACY L. WINSOR
Senior Assistant Attorneys General
DENNIS L. BECK, JR.
GARY TAVETIAN
Supervising Deputy Attorneys General
KAVITA LESSER
KATHERINE GAUMOND
STACY LAU
CAITLAN MCLOON
Deputy Attorneys General
 300 S. Spring Street
 Los Angeles, CA 90013
 Telephone: (213) 269-6605
 Email: Kavita.Lesser @doj.ca.gov

FOR THE STATE OF
COLORADO

PHILIP J. WEISER
Attorney General

*/s/ Carrie Noteboom*
Carrie Noteboom
Assistant Deputy Attorney General
William Marshall
Assistant Attorney General
Natural Resources and
Environment Section
Ralph C. Carr Colorado
Judicial Center
1300 Broadway, Seventh Floor
Denver, Colorado 80203
(720) 508-6285
carrie.noteboom@coag.gov

FOR THE STATE OF
CONNECTICUT

WILLIAM TONG
Attorney General

*/s/ Jill Lacedonia*
Matthew I. Levine
Deputy Associate Attorney General
Jill Lacedonia
Assistant Attorney General
Connecticut Office of the
Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
jill.lacedonia@ct.gov

FOR THE STATE OF
DELAWARE

KATHLEEN JENNINGS
Attorney General

*/s/ Vanessa L. Kassab*
Christian Douglas Wright
Director of Impact Litigation
Ralph K. Durstein III
Vanessa L. Kassab
Deputy Attorneys General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

*/s/ Jason E. James*
Matthew J. Dunn
Division Chief,
Environmental/Asbestos
Enforcement Division
Jason E. James
Assistant Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(872) 276-3583
jason.james@ilag.gov

FOR THE STATE OF
MARYLAND

ANTHONY G. BROWN
Attorney General

*/s/ Joshua M. Segal*
Joshua M. Segal
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202
(410) 576-6446
jsegal@oag.state.md.us

FOR THE STATE OF MICHIGAN

DANA NESSEL
Attorney General

*/s/ Elizabeth Morrisseau*
Elizabeth Morrisseau
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
6th Floor G. Mennen
Williams Building
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
morrisseaue@michigan.gov

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General

*/s/ Emma Akrawi*
Emma Akrawi
Assistant Attorney General
Natural Resources Division
6 State House Station
Augusta, ME 04333-0006
(207) 626-8800
emma.akrawi@maine.gov

FOR THE COMMONWEALTH
OF MASSACHUSETTS

ANDREA JOY CAMPBELL
Attorney General

*/s/ Turner Smith*
Turner Smith
Assistant Attorney General &
Deputy Bureau Chief
Julia Jonas-Day
Assistant Attorney General for
Climate Change
Energy & Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
(617) 727-2200
turner.smith@mass.gov

FOR THE STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General

*/s/ William Grantham*
William Grantham
Assistant Attorney General
408 Galisteo Street
Santa Fe, NM 87501
(505) 717-3520
wgrantham@nmag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General

*/s/ Morgan A. Costello*
Morgan A. Costello
Chief, Affirmative Litigation
Michael J. Myers
Senior Counsel
Environmental Protection Bureau
Judith N. Vale
Deputy Solicitor General
The Capitol
Albany, New York 12224
(518) 776-2392
morgan.costello@ag.ny.gov

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
Attorney General

*/s/ Lisa J. Morelli*
Lisa J. Morelli
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
(609) 376-2740
Lisa.Morelli@law.njoag.gov

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
Attorney General

*/s/ Paul Garrahan*
Paul Garrahan
Attorney-in-Charge
Steve Novick
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(971) 719-1377
Paul.Garrahan@doj.state.or.us

FOR THE STATE OF NORTH
CAROLINA

JOSHUA H. STEIN
Attorney General

*/s/ Asher P. Spiller*
Asher P. Spiller
Special Deputy Attorney General
Daniel S. Hirschman
Senior Deputy Attorney General
Taylor H. Crabtree
Assistant Attorney General
North Carolina
Department of Justice
P.O. Box 629
Raleigh, NC 27602
(919) 716-6400
aspiller@ncdoj.gov

FOR THE COMMONWEALTH
OF PENNSYLVANIA

MICHELLE A. HENRY
Attorney General

*/s/ Ann R. Johnston*
Ann R. Johnston
Assistant Chief Deputy
Attorney General
Civil Environmental
Enforcement Unit
Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, Pennsylvania 17120
(717) 497-3678
ajohnston@attorneygeneral.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
Attorney General

*/s/ Melanie Kehne*
Melanie Kehne
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT 05609
(802) 828-3171
melanie.kehne@vermont.gov

FOR THE STATE OF RHODE
ISLAND

PETER F. NERONHA
Attorney General

*/s/ Alison Hoffman Carney*
Alison Hoffman Carney
Assistant Attorney General
Chief, Environment and
Energy Unit
Rhode Island Office of the
Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2116
acarney@riag.ri.gov

FOR THE STATE OF
WASHINGTON

ROBERT W. FERGUSON
Attorney General

*/s/ Caroline E. Cress*
Caroline E. Cress
Christopher H. Reitz
Assistant Attorneys General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6770
caroline.cress@atg.wa.gov


FOR THE DISTRICT OF
COLUMBIA

BRIAN L. SCHWALB
Attorney General

*/s/ Caroline S. Van Zile*
Caroline S. Van Zile
Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR THE STATE OF
WISCONSIN

JOSHUA L. KAUL
Attorney General

*/s/ Bradley J. Motl*
Bradley J. Motl
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-0505
motlbj@doj.state.wi.us

## CERTIFICATE AS TO PARTIES AND AMICI

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), I hereby certify the parties and amici are as follows:

Petitioners:  Petitioners in Case No. 24-1054 are the State of Texas, Railroad Commission of Texas, and Texas Commission on Environmental Quality. Petitioners in Case No. 24-1059 are the States of Oklahoma, West Virginia, Arkansas, Alabama, Alaska, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, Tennessee, Utah, Wyoming, the Commonwealths of Kentucky and Virginia, and the Arizona Legislature.

Respondents:  Respondents are the United States Environmental Protection Agency and Michael Regan, Administrator, United States Environmental Protection Agency.

Intervenors:  On March 12, 2024, Clean Air Council, Center for Biological Diversity, Dakota Resource Council, Earthworks, Environmental Defense Fund, Environmental Law & Policy Center, Food & Water Watch, Forth Berthold Protectors of Water and Earth Rights, GreenLatinos, Natural Resources Defense Council, and Sierra Club moved to intervene in support of Respondents. ECF No. 2044639. I am not aware of any other intervenors or movant-intervenors at the time of this filing.

Rulings Under Review.  Petitioners seek review of the final action of respondent United States Environmental Protection Agency entitled "Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review," 89 Fed. Reg. 16,820 (March 8, 2024).

Amici Curiae: I am unaware of any entities that have given notice of, asked for leave to appear, or have been granted leave to appear as amicus curiae.

Dated:  March 18, 2024     */s/ Kavita Lesser*
            KAVITA LESSER

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the motion complies Fed. R. App. P. 27(d)(2)(A)

because it contains 3,172 words, excluding the parts of the motion exempted under

Fed. R. App. P. 32(f), according to the count of Microsoft Word.

I further certify that this filing complies with the requirements of Fed. R.

App. P. 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a

proportionally spaced font.

Dated:  March 18, 2024                    */s/ Kavita Lesser*
                                          KAVITA LESSER

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing motion was filed on March 18, 2024 with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system and that, therefore, service was accomplished upon counsel of record by the Court's system.

Dated:  March 18, 2024                                  */s/ Kavita Lesser*
                                                                     KAVITA LESSER