**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, ) | |
| ) | |
| *Petitioners*, ) | |
| ) | |
| v. ) | No. 24-1054 (consolidated with No. 24-1059) |
| ) | |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, *et al.*, ) | |
| ) | |
| *Respondents*. ) | |

On Petition for Review of Final Action of the
United States Environmental Protection Agency

## MOTION TO INTERVENE IN SUPPORT OF PETITIONERS

Pursuant to Federal Rule of Appellate Procedure 15(d) and 27 and D.C.
Circuit Rules 15(b) and 27, Continental Resources, Inc. ("Continental Resources")
hereby respectfully moves to intervene in support of Petitioners the State of Texas,
Railroad Commission of Texas, and Texas Commission on Environmental Quality
(collectively "Texas Petitioners") in Texas Petitioners' petitions for review in *State
of Texas et al., v. United States Environmental Protection Agency, et al.*, Case No.
24-1054 (lead case, consolidated with Case No. 24-1059) and Petitioners in Case

No. 24-1059 States of Oklahoma, West Virginia, Arkansas, Alabama, Alaska, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, Tennessee, Utah, Virginia, and Wyoming (collectively "State Petitioners"). These consolidated actions are challenges to the United States Environmental Protection Agency's ("EPA") final rule entitled *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 89 Fed. Reg. 16,820 (March 8, 2024) ("Methane Rule").

## INTRODUCTION

The Methane Rule revises the new source performance standards ("NSPS") for methane and volatile organic compounds ("VOC") for the crude oil and natural gas source category pursuant to EPA's authority under section 111(b) and 111(d) of the Clean Air Act ("the Act"). 89 Fed. Reg. at 16,820; 42 U.S.C. § 7411(b). Of importance here, the Methane Rule has two main components:

First, the Methane Rule expands methane and VOC emission reductions requirements for sources in the Crude Oil and Natural Gas source category that were constructed, reconstructed, or modified after December 6, 2022, under 40 Code of Regulations (CFR) part 60, subpart OOOOb ("Quad Ob"). 89 Fed. Reg. at 16,821

Second, the Methane Rule imposes *for the first time* methane emission reductions requirements for all existing sources in the Crude Oil and Natural Gas

source category that were constructed on or before December 6, 2022, under 40 Code of Regulations (CFR) part 60, subpart OOOO and OOOOc ("Quad Oc"). 89 Fed. Reg. at 16,821-16,822.

Continental Resources seeks to intervene in this proceeding – including any other cases that may be later filed seeking review of the Methane Rule, *see* D.C. Cir. Rule 15(b) – to protect Continental Resources' substantial interests that may be impaired by the disposition of this case. Continental Resources is a top ten oil producer in the U.S. based in Oklahoma City, Oklahoma. Continental Resources is the largest leaseholder and the largest producer in the Bakken play in North Dakota and Montana. Continental Resources also has significant positions in the SCOOP and STACK plays in the Anadarko Basin in Oklahoma and positions in the Powder River Basin in Wyoming and Permian Basin in Texas. **Attachment 1**, Decl. of S. Flynn at ¶ 5. As of December 31, 2023, Continental Resources was involved in the production of 2,304,317 developed acres and 936,385 undeveloped acres, and owned a working interest in 8,536 wells across all basins in which it operates. *Id.* at ¶ 6. Approximately 320,000 of that acreage includes federal and Bureau of Indian Affairs lands. *Id.*

As set forth herein, Continental Resources has a compelling interest in intervening in support of Petitioners challenging the Methane Rule, meets the standards for intervention, and this motion should be granted.

## ARGUMENT

In support of its motion, Continental Resources states as follows:

**I.    Continental Resources Satisfies the Standards for Intervention.**

Federal Rule of Appellate Procedure 15(d) requires that a party moving to intervene sets forth its interest and the grounds for intervention.  Intervention under Rule 15(d) is granted where the moving party's interests in the outcome of the action are direct and substantial.  *See, e.g., Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 744-45 (D.C. Cir. 1986) (intervention allowed under Rule 15(d) because petitioners were "directly affected by" agency action); *Bales v. NLRB*, 914 F.2d 92, 94 (6th Cir. 1990) (granting Rule 15(d) intervention to party with "substantial interest in the outcome").  The decision to allow intervention is guided by practical considerations and the "need for a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 700, 702 (D.C. Cir. 1967).  Although Rule 15(d) does not provide clear criteria for intervention, Federal Rule of Civil Procedure 24(a) and the "policies underlying intervention" in federal district courts provide guidance.  *See Int'l Union U.A.W. v. Scofield*, 382 U.S. 205, 216 n.10

(1965); *Amalgamated Transit Union Int'l v. Donovan*, 771 F.2d 1551, 1553 n.3 (D.C. Cir. 1985) (per curiam).

Federal Rule of Civil Procedure 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24. Additionally, a prospective intervenor must also demonstrate that it has Article III standing. *See Yocha Dehe Wintun Nation v. Dep't of Interior*, 3 F.4th 427, 430 (D.C. Cir. 2021) ("Additionally, to intervene under Rule 24(a), the movant must demonstrate that it has standing under Article III of the U.S. Constitution.") (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003)).

As discussed below, Continental Resources satisfies the requirements of intervention under Federal Rule of Civil Procedure 24(a) because: (1) the intervention motion is timely, (2) Continental Resources has a cognizable interest in the case supporting Article III standing, (3) Continental Resources' absence from the case will impair its ability to protect its interests, and (4) Continental Resources' interests are inadequately represented by the existing parties. *See Williams & Humbert, Ltd. v. W&H Trade Marks (Jersey)*, 840 F.2d 72, 74 (D.C. Cir. 1988).

## A. Continental Resources' Application is Timely.

Continental Resources has filed this Motion to Intervene within the thirty-day statutory timeframe to intervene after the filing of the Petitions for Review in Case Nos. 24-1054 (March 8, 2024) and 24-1059 (March 12, 2024), and this Motion to Intervene constitutes a motion to intervene in all of these Petitions for Review. *See* Fed. R. App. P. 15(d). This Motion to Intervene is also timely as Petitioners' initial filings are not yet due, and therefore Continental Resources' intervention will not unduly delay or prejudice any party and will not interfere with any schedule set by the Court.

This case is in its earliest stage. The Respondents have not yet filed an answer or certified an administrative record. No briefing schedule has been set, and granting Continental Resources intervention will not disrupt this litigation or prejudice any party. Further, Continental Resources is prepared to follow and abide by any briefing schedule and all other deadlines later set in this action. Continental Resources motion is timely.

## B. Continental Resources Has a Cognizable Interest in this Case Supporting Article III Standing and Its Absence from These Consolidated Cases Will Impair Its Ability to Protect That Interest.

The D.C. Circuit determines whether a party has a legally cognizable interest by "looking to the practical consequences of denying intervention." *Fund for Animals, Inc.*, 322 F.3d at 735 (quotation omitted). A party seeking leave to

intervene as of right pursuant to Rule 24(a) must further demonstrate that it has both constitutional and prudential standing to participate as a party in the case. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998) ("Thus, a party that seeks to intervene as of right must demonstrate that it has standing to participate in the action."). Nonetheless, this Court has held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *accord Fund for Animals, Inc.*, 322 F.3d at 735. As discussed below, Continental Resources satisfies the requirements of Federal Rule of Civil Procedure 24(a) and meets any standing test that applies to intervention.

"Whether a proposed intervenor is 'so situated that the disposition of an action may as a practical matter impair or impede [its] ability to protect [its] interest,' Fed. R. Civ. P. 24(a), is determined by 'looking to the practical consequences of denying intervention, even where the possibility of future challenge to the regulation remains available.'" *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 6-7 (D.D.C. 2008) (*quoting Fund for Animals*, 322 F.3d at 735). Courts have routinely recognized that when objects of governmental regulation are involved, "there is ordinarily little question that the action or inaction has caused [them] injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *CropLife Am. v. EPA*, 329 F.3d 876, 884 (D.C. Cir. 2003) (if there is "no doubt" a rule causes injury to a

regulated party, standing is "clear"); *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (trade association had standing in challenge to EPA regulation where some of its members were subject to the regulation). In cases involving petitions for review of EPA regulations, this Circuit has consistently granted requests by regulated entities to intervene. *See, e.g.*, *Sierra Club v. EPA*, No. 13-1112 (Doc.# 1436907) (D.C. Cir. May 20, 2013) (order granting trade association's motion to intervene in a petition to review a Clean Air Act rulemaking governing Portland cement manufacturing).

Here, Continental Resources will be regulated under the Methane Rule, and is the object of the very governmental regulation at issue. Continental Resources is an oil producer operating in Oklahoma, North Dakota, Montana, Wyoming, and Texas and will be subject to the requirements of the Methane Rule if it is not vacated or enjoined. Continental Resources faces significant challenges in adapting its operations to meet the federal requirements imposed by the Methane Rule. Any holding resulting from this litigation, which allows the Methane Rule to go into effect as promulgated, would impose significant additional compliance burdens on Continental Resources. **Attachment 1**, Decl. of S. Flynn at ¶¶ 9-10. The injury that Continental Resources will suffer is thus directly traceable to EPA's promulgation of the Methane Rule. This injury will be redressed should this Court vacate and

remand the rulemaking, which is the relief Continental Resources will request should it be permitted to intervene in the case.

Further, Continental Resources participated in the regulatory proceedings leading up to EPA's adoption of the Methane Rule. For example, Continental Resources participated in the notice and comment process during EPA's promulgation of the Methane Rule. *See* Docket No. EPA–HQ–OAR–2021-0317-0839 (Comments of Continental Resources on the proposed Methane Rule). **Attachment 1**, Decl. of S. Flynn at ¶ 8. As raised in Continental Resources' comments, the Methane Rule would impose significant new regulatory burdens on Continental Resources, including:

1) The Quad Oc rules, for the first time, impose methane emission reduction requirements for all existing sources constructed on or before December 6, 2022, creating significant operational and regulatory burdens for Continental Resources (89 Fed. Reg. at 16,821-16,822);

2) The Methane Rule essentially deputizes third-parties to notify EPA of "super-emitter" events, creating new reporting and investigation requirements for operators (89 Fed. Reg. at 16,877);

3) The Methane Rule incorporates new regulatory requirements for operators not found in the initial proposed rule, including: National Emission Standards for Hazardous Air Pollutants ("NESHAP") (89 Fed. Reg. at 16,901; 17,105); and

phases out and eventually prohibits routine flaring of associated gas from newly constructed wells that are developed after the effective date of this rule (89 Fed. Reg. at 16,825); and

4) The Methane Rule imposes new leak detection, liquids unloading, associated gas flaring, and storage tank requirements bringing multiple new sources to federal regulation.

*Id.* at ¶ 9. The Petitions in these consolidated cases implicate the same issues raised in Continental Resources' comments on the Methane Rule, and highlight the significant challenges Continental Resources faces in adapting its operations to meet the federal requirements imposed by the Methane Rule. Continental Resources clearly has a cognizable interest in the outcome of the petitions challenging the Methane Rule sufficient to confer standing under this Circuit's precedence.

### C. Continental Resources' Interests are Not Adequately Represented by Existing Parties.

Continental Resources' interests are not adequately represented by other parties in these consolidated cases. The burden of demonstrating inadequate representation "is not onerous," and Continental Resources "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, none of the existing parties (or proposed intervenors) can adequately represent Continental Resources' interests. Continental Resources is the sole oil producer industry representative to intervene in this action. The Texas Petitioners and State Petitioners represent State entities that cannot adequately represent Continental Resources' industry perspective in this action. Even if Continental Resources and the Texas Petitioners and State Petitioners interests were more closely aligned, "that [would] not necessarily mean that adequacy of representation is ensured." *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); *see also Trbovich*, 404 U.S. at 538 n.10 (finding a prospective intervenor met his "minimal" burden of showing possible inadequate representation of his interests by the government even where a statute expressly obligated the Secretary of Labor to serve his interests).

To date, no other pending Intervenor-Petitioners are industry groups or companies engaged in the production of oil and gas, but instead are States or State-entities that represent their individual constituents. Continental Resources has a unique interest in protecting its business and regulatory interests that the States and State-entity Petitioners cannot represent. Continental Resources faces significant economic and regulatory implications that are simply not represented by existing parties to these consolidated cases. Further, Continental Resources sole position as an industry representative offers unique and valuable perspective in this action, including the compliance challenges it will face under the Methane Rule.

For the foregoing reasons, Continental Resources respectfully requests that this Court grant its motion to intervene.


Dated:  April 8, 2024

Respectfully submitted,

CONTINENTAL RESOURCES, INC.


*s/ Paul M. Seby*
Paul M. Seby
Greenberg Traurig, LLP
1144 15th Street, Suite 3300
Denver, CO 80202
Telephone:  (303) 572-6584
Fax:  (303) 572-6540
sebyp@gtlaw.com

***Counsel for Proposed Intervenor-Petitioner Continental Resources, Inc.***

## CERTIFICATE OF COMPLIANCE

The foregoing motion complies with the type volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure because it contains 2,326 words, excluding parts exempted by Rule 32(f) of the Federal Rules of Appellate Procedure, according to the count of Microsoft Word. The foregoing motion also complies with Rules 27(d)(1)(E), 32(a)(5), and 32(a)(6) of the Federal Rules of Appellate Procedure because it has been prepared in 14-point Times New Roman type.

Dated:  April 8, 2024                    Respectfully submitted,

*s/ Paul M. Seby*
Paul M. Seby

***Counsel for Proposed Intervenor-Petitioner Continental Resources, Inc.***

## CERTIFICATE OF PARTIES

Pursuant to Circuit Rules 27(a)(4) and 28(a)(1)(A), Continental Resources furnishes this list of parties, intervenors, and amici curiae that have appeared before this Court in Case No. 24-1054 (and consolidated cases) as an addendum to its motion to intervene.

**Petitioners:** The Petitioners in Case No. 24-1054 are the State of Texas, Railroad Commission of Texas, and Texas Commission on Environmental Quality. The Petitioners in consolidated Case No. 24-1059 are the States of Oklahoma, West Virginia, Arkansas, Alabama, Alaska, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, South Carolina, Tennessee, Utah, Virginia, and Wyoming.

**Respondents:** The Respondents in this Case are the United States Environmental Protection Agency and Michael S. Regan, in his capacity as Administrator of the EPA.

**Intervenor-Respondents:** Motions to Intervene for Respondents were filed by the Clean Air Council, Center for Biological Diversity, Dakota Resource Council, Earthworks, Environmental Defense Fund, Environmental Law & Policy Center, Food & Water Watch, Fort Berthold Protectors of Water and Earth Rights, GreenLatinos, Natural Resources Defense Council, and Sierra Club. To the

knowledge of Continental Resources, this Court has not yet granted any of these motions to intervene as Intervenor-Respondents as of the time of this filing.

**Amici Curiae:** To the knowledge of Continental Resources, there are no amici curiae as of the time of this filing.

Dated: April 8, 2024            Respectfully submitted,

                                    *s/ Paul M. Seby*
                                    Paul M. Seby

                                    ***Counsel for Proposed Intervenor-Petitioner Continental Resources, Inc.***

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Circuit Rules 26.1(a), 27(a)(4) and 28(a)(1)(A) and Fed. R. App. P. 26.1, Continental Resources hereby identifies all parent companies and any publicly held company that has a 10% or greater ownership interest (such as stock or partnership shares) in Continental Resources:

None.

Pursuant to Circuit Rule 26.1(b), Continental Resources hereby identifies Continental Resources' general nature and purpose, insofar as relevant to the litigation: Continental Resources is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. Continental Resources is an independent oil producer in the U.S., and is a lessee of federal oil and natural gas leases in North Dakota, Montana, and Wyoming and as such is subject to the requirements of the Methane Rule at issue in this action.


Dated: April 8, 2024                        Respectfully submitted,

                                            *s/ Paul M. Seby*
                                            Paul M. Seby

                                            ***Counsel for Proposed Intervenor-Petitioner Continental Resources, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, April 8, 2024, I filed the above document using the ECF system, which will automatically generate and send service to all registered attorneys participating in this case.

Dated:  April 8, 2024                    Respectfully submitted,

                              *s/ Paul M. Seby*
                              Paul M. Seby

                              ***Counsel for Intervenor-Petitioner***
                              ***Continental Resources, Inc.***

# ATTACHMENT 1

**Declaration of Sean Flynn
Submitted in Support of Continental Resources,
Inc.**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

|  |  |  |
|---|---|---|
| STATE OF TEXAS, *et al.*, | ) | |
| | ) | |
| *Petitioners*, | ) | |
| | ) | |
| v. | ) | No. 24-1054 (consolidated with No. 24-1059) |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |

On Petition for Review of Final Action of the
United States Environmental Protection Agency

**DECLARATION OF SEAN FLYNN
Submitted in Support of Continental Resources, Inc.**

I, Sean Flynn, declare that the following statements made by me are true and correct to the best of my knowledge, information, and belief:

1. I am the Vice President of Health, Safety, and Environmental at Continental Resource, Inc. ("Continental Resources"). I have worked for Continental Resources for 5 years in Oklahoma City, Oklahoma.

2. As a Vice President, I manage the Health, Safety and Environmental processes, and personnel supporting Continental Resources' companywide operations and development activity. I also coordinate Continental Resources Environmental, Social, and Governance reporting programs.

3. As a Vice President of Health, Safety, and Environmental, I am familiar with the day-to-day and long-term operations of Continental Resources, and I am qualified and authorized by Continental Resources to speak to the matters discussed in this declaration.

4. I am submitting this declaration in support of Continental Resources' Motion to Intervene in Support of Petitioners challenges to the United States Environmental Protection Agency's ("EPA") final rule entitled *Standards of Performance for New, Reconstructed, and Modified Sources and Emissions Guidelines for Existing Sources: Oil and Natural Gas Sector Climate Review*, 89 Fed. Reg. 16,820 (March 8, 2024) ("Methane Rule").

5. Continental Resources is a top ten oil producer in the U.S. based in Oklahoma City, Oklahoma. Continental Resources is the largest leaseholder and the largest producer in the Bakken play of North Dakota and Montana. Continental Resources also has significant positions in the SCOOP and STACK plays of the Anadarko Basin of Oklahoma and positions in the Powder River Basin of Wyoming and Permian Basin of Texas.

6. As of December 31, 2023, Continental Resources was involved in the production of 2,304,317 developed acres and 936,385 undeveloped acres, and owned a working interest in 8,536 wells across all basins in which it operates. Approximately 320,000 of that acreage includes federal and Bureau of Indian Affairs lands.

7. Continental Resources has a direct and substantial interest in the Methane Rule, including ensuring the Methane Rule is consistent with EPA's statutory authority under the Clean Air Act, its cooperative federalism, and EPA's own past practice implementing programs under the Clean Air Act over the past five decades.

8. Continental Resources submitted comments on EPA's proposed Methane Rule on January 31, 2022. *See* Docket No. EPA–HQ–OAR–2021-0317-0839 (Comments of Continental Resources on the proposed Methane Rule).

9. The EPA Final Methane Rule will substantially adversely impact Continental Resources. For example, the EPA Final Methane Rule imposes significant regulatory compliance burdens on Continental such as:

    a. Imposing methane emission requirements on existing sources Continental Operates across the United States;

    b. Creating new response obligations in relation to EPA's super-emitter program;

    c. Creating new National Emission Standards for Hazardous Air Pollutants requirements;

    d. Phasing out and prohibiting routine flaring at wells Continental Resources operates;

    e. Creating new leak detection, liquids unloading, associated gas flaring, and storage tank requirements at wells Continental Resources operates.

10. Based on my familiarity with Continental Resources operations nationwide, these new requirements in the Methane Rule impose significant compliance burdens on Continental Resources.

11. As such, if the Methane Rule is not vacated and remanded to EPA, Continental Resources will be subject to significant additional operational costs and compliance burdens.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Signed this 8th day of April, 2024, in OKC , Oklahoma.

_____

Sean Flynn
Vice President, Health, Safety, and Environmental
Continental Resources, Inc.