No. 24-1059 (consolidated with 24-1054)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF OKLAHOMA, STATE OF WEST VIRGINIA, STATE OF ARKANSAS, *et al.*,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,

*Respondents.*

## PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION TO STAY

GENTNER DRUMMOND
  ATTORNEY GENERAL

Garry M. Gaskins, II
*Solicitor General*
Jennifer L. Lewis
*Deputy Attorney General*

OFFICE OF THE ATTORNEY
GENERAL OF OKLAHOMA
313 NE Twenty-First St.
Oklahoma City, OK 73105
Phone: (405) 521-3921
Fax: (405) 521-6246
garry.gaskins@oag.ok.gov
jennifer.lewis@oag.ok.gov

*Counsel for State of Oklahoma*

PATRICK MORRISEY
  ATTORNEY GENERAL

LINDSAY S. SEE
*Solicitor General*
MICHAEL R. WILLIAMS
*Principal Deputy Solicitor General*

OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
lindsay.s.see@wvago.gov
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

[additional counsel listed after signature page]

# TABLE OF CONTENTS

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 2

I.      The States Are Likely To Succeed On The Merits ................................... 2

    A.      The Rule deprives States of their powers under the Act ............... 2

    B.      EPA arbitrarily gave States just two years to submit plans ......... 6

II.     The States Will Suffer Irreparable Harm Without A Stay ...................... 7

III.    The Other Factors Favor A Stay ............................................................. 10

Conclusion ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ala. Env't Council v. EPA.*,
  711 F.3d 1277 (11th Cir. 2013)........................................................2

*Am. Lung Ass'n v. EPA*,
  985 F.3d 914 (D.C. Cir. 2021)........................................................6

*Coal. to Def. Affirmative Action v. Granholm*,
  473 F.3d 237 (6th Cir. 2006)........................................................10

*District of Columbia. v. U.S. Dep't of Agric.*,
  444 F. Supp. 3d 1 (D.D.C. 2020)........................................................8

*Getty v. Fed. Sav. & Loan Ins. Corp.*,
  805 F.2d 1050 (D.C. Cir. 1986)........................................................7

*Kentucky v. Biden*,
  23 F.4th 585 (6th Cir. 2022) ........................................................10

*Michigan v. EPA*,
  268 F.3d 1075 (D.C. Cir. 2001)........................................................9

*Ohio v. Becerra*,
  87 F.4th 759 (6th Cir. 2023) ........................................................8

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)........................................................3

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016)........................................................9

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)........................................................8

*Train v. Nat. Res. Def. Council, Inc.*,
  421 U.S. 60 (1975)........................................................3

*U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*,
  590 U.S. 604 (2020)........................................................5

*Union Elec. Co. v. EPA*,
  427 U.S. 246 (1976)........................................................5

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*Util. Air Regul. Grp. v. EPA,*
573 U.S. 302 (2014)............................................................................1, 2, 7

*West Virginia v. EPA,*
597 U.S. 697 (2022)................................................................................2, 7

*Wyoming v. U.S. Dep't of the Interior,*
493 F. Supp. 3d 1046 (D. Wyo. 2020) ......................................................3

**Statutes**

42 U.S.C. § 7401 ......................................................................................1

42 U.S.C. § 7411 ......................................................................................4

42 U.S.C. § 7509 ......................................................................................7

**Other Authorities**

40 Fed. Reg. 53340 (Nov. 17, 1975) ........................................................4

89 Fed. Reg. 16820 (Mar. 8, 2024)...........................................................3

Hannah J. Wiseman,
*Regulatory Islands*, 89 N.Y.U. L. Rev. 1661 (2014)...............................5

# GLOSSARY

CAA ....................................................................................Clean Air Act

EPA ...............................................................Environmental Protection Agency

VOCs.........................................................................Volatile Organic Compounds

## INTRODUCTION

EPA's response confirms it: in this Rule, EPA has placed the States firmly in the back seat.  EPA holds the power when it comes to regulating air pollution, we're told, so it gets to set standards that amount to strict, direct regulation.  EPA gave the States more than enough time to develop implementation plans, we're assured, because EPA gave the States more than the default period—a "default," coincidentally, set by EPA.  EPA dubs the States' injuries "speculative" (in the face of declaration after declaration saying otherwise) because *EPA* thinks the evidence somehow isn't reliable.  And perhaps most disappointing of all, "harm to state sovereignty" is dismissed as an "insubstantial" afterthought.

The approach exemplified in the responses of EPA and its friends—and throughout the Rule itself—turns the Clean Air Act on its head.  Remember that preventing and controlling air pollution "is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3).  Especially for existing sources, States get to make the principal decisions, and EPA is supposed to act as a backstop.  Yet the Rule does the opposite, presuming that EPA has already identified a universal right answer.  The Rule also puts a time squeeze on the States that compels them to forfeit their statutorily protected discretion.  States must either adopt the presumptive standards or risk running out of time to submit an alternative plan.

EPA gets one thing right: "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation."  EPA.Resp.23

(quoting *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001)).  Yet EPA invites this Court to do just that, turning Congress's choice to give "primary responsibility" to the States on its head.  Because the Rule "would be inconsistent with—in fact, would overthrow—the Act's structure and design," this Court should stay it.  *Util. Air Regul. Grp. v. EPA ("UARG")*, 573 U.S. 302, 321 (2014).

## ARGUMENT

At every turn, EPA maximizes its own power, its own preferences, and its own discretion.  The law disagrees.

## I.     The States Are Likely To Succeed On The Merits.

The States explained how the Rule violates the CAA in at least two ways. Mot.6–15.  Yet EPA thinks the States "ma[d]e no serious argument on the merits." EPA.Resp.1.  EPA's unwillingness to face reality is the signal that it has no real answer to the States' valid concerns.

### A.     The Rule deprives States of their powers under the Act.

The CAA gives the States control over the *implementation* of CAA standards.  Mot.7.  EPA and its supporting intervenors conflate EPA's role as the guideline-setter with the States' role as the implementing entities. Guideline-setting constitutes a "narrow role to be played by the EPA." *Ala. Env't Council v. EPA*, 711 F.3d 1277, 1280 (11th Cir. 2013) (cleaned up); *see also West Virginia v. EPA*, 597 U.S. 697, 724 n.3 (2022) (explaining that EPA's role for existing sources is to "guide States").  In contrast, in deciding

2

implementation questions, "the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975) (discussing CAA Section 110); *see also, e.g.*, *Wyoming v. U.S. Dep't of the Interior*, 493 F. Supp. 3d 1046, 1071 n.23 (D. Wyo. 2020) (describing the "outsized role" States play under Section 111(d)).

EPA and its allies think that EPA's "presumptive" standards line up with this approach, but they redefine those standards in saying so. The Rule is clear about the import of the "presumptive" standards—state plans will be measured not against their ability to hit the Rule's emission guidelines but rather for their consistency with the presumptive standards themselves. *See, e.g.*, 89 Fed. Reg. 16820, 16848 (Mar. 8, 2024). And the Rule goes on to lay out an onerous multi-step process for any States that try to use something other than a presumptive standard. *Id.* at 16996; *see also id.* at 17001–02 (reserving purported authority for EPA to reject non-presumptive-standard approaches); *id.* at 17004 (explaining EPA's view that it would be "extremely unlikely" States could justify using a non-presumptive standard based on cost considerations in many circumstances); *id.* at 17006 (warning that parts of a state plan that differ from a presumption will be "thoroughly reviewed"). Even calling these mandates "presumptive"—rather than permissive—is telling. "To establish a 'presumption' is to say that a finding of the predicate fact" (here, that a certain source is covered) "produces a required conclusion in the absence of explanation" (here, that EPA's preferred rules apply). *St.*

3

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (cleaned up). *Maybe* the question would be different if EPA had used model rules instead because those might be closer to suggestions. EPA.Resp.9. But it didn't.

EPA also insists that the States retain discretion, but the options it lists aren't comforting. For instance, it points to "remaining useful life" and "other factors" as avenues of state discretion. EPA.Resp.10. But on the very next page, EPA argues that the States have no right to complain about how EPA recently regulated "remaining useful life" considerations in such a way as to practically take them off the table. EPA.Resp.11. Of course, the States *do* have the right to question EPA's approach to remaining useful life here, as an error in this rulemaking isn't immunized just because it was baked into an earlier rulemaking, too. But the States' original point stands: at least as EPA has rewritten it, remaining useful life is no longer a shelter in the storm. Mot.9–10.

EPA and others further note the States could adopt more stringent standards, but that ignores States' discretion to match the degree of emission limitation achievable with the best system of emission reduction. 42 U.S.C. § 7411(a)(1), (d). And in truth, the CAA does not contemplate a ratchet where States can only go up; the statute's references to source-specific factors make plain that States were meant to be able to vary downward if need be. EPA recognized that notion when it first implemented Section 111(d). *See* 40 Fed. Reg. 53340, 53343 (Nov. 17, 1975) ("States will also have the authority to grant variances in cases of economic hardship.").

After insisting it can set presumptive standards (a process not contemplated by the statute), and then defending its right to set up obstacles to adopting anything but those standards (a process not contemplated by the statute), EPA still maintains that the States have "adequate recourse" to the loss of their sovereignty and discretion: participating in notice-and-comment rulemaking and judicial review.  EPA.Resp.10.  But the States should hardly take comfort from the chance to submit comments to a regulator that has already announced that its preferences will trump.  And although the States have faith that the courts will vindicate their sovereign interests, they should not have to run the gauntlet of protracted and sometimes deferential judicial review to secure the rights that the CAA has already reserved to them.  EPA should be respecting the States' discretion at the front end, not the back.

From the beginning, "states have retained nearly full authority over the development of oil and gas."  Hannah J. Wiseman, *Regulatory Islands*, 89 N.Y.U. L. REV. 1661, 1682 (2014).  If EPA is going to change that, it must find "exceedingly clear [statutory] language" allowing it to do so.  *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 622 (2020).  That language is absent here.  Quite the opposite: "Congress plainly left with the States, so long as the national standards were met, the power to determine which sources"— oil and gas included—"would be burdened by regulation and to what extent." *Union Elec. Co. v. EPA*, 427 U.S. 246, 269 (1976).  The States are likely to succeed on this claim.

**B.      EPA arbitrarily gave States just two years to submit plans.**

The States already explained why two years is not enough to prepare implementation plans: the scale of this Rule is massive, the new requirements are many, and the complexities of regulating oil and gas in this novel way will take time to resolve.  Mot.11–15.  In response, EPA largely relies on an inapplicable case, its own inapposite guidelines, and empty promises.

Take the case first.  In *American Lung Association v. EPA*, 985 F.3d 914, 991-95 (D.C. Cir. 2021) (per curiam), this Court faulted EPA for extending out compliance timelines for *all* Section 111(d) plans without adequate explanation.  The agency had cited a need for "regulatory symmetry" with CAA Section 110, which allows two years to submit a plan.  *Id.* at 995.  But here, the States and other commenters showed that more than "convenience" or "symmetry" was at stake.  *Id.*  Specific, documented problems of regulating this enormous source category justified more time.  EPA needed to address those problems.  It didn't.  And though *American Lung* also suggested climate change could warrant urgency, the two-and-a-half-year road EPA took to issue the Rule belies that idea here.  *See* Mot.3–4.

EPA's Section 111(d) implementing regulations (which establish "default" timelines) are no help, either.  The defense is an odd one.  Agencies can't defend an onerous timeline merely by noting the fact that they could have self-selected a shorter one.  Defaults don't matter; facts on the ground do.  And it's especially odd to compare the timeline here with the previous timeline "in place for 40 years."  EPA.Resp.14.  Section 111(d) "had rarely been used in the

6

preceding decades," and certainly not in a way that regulated vast industries like these, *West Virginia*, 597 U.S. at 724, save perhaps one failed attempt, *UARG*, 573 U.S. at 324. In suggesting that the former timelines are relevant, EPA confirms that it does not sufficiently appreciate the game-changing nature of the Rule. And complexity and novelty call for more time.

Lastly, EPA's flat promises that it "reasonably accounted" for "all" "relevant circumstances," EPA.Resp.13, and that the States won't be hurt by missing the deadline, *id.* at 14, aren't worth considering. EPA must provide more than "conclusory statements." *Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1057 (D.C. Cir. 1986). The States' evidence shows that the first assurance is wrong. And the second assurance fares no better. It's possible States might lose highway funds and support for pre-existing air-pollution programs. *See* 42 U.S.C. § 7509(a)–(b)(2). Even if they didn't, they'd still lose their sovereign right to make their own decisions before EPA jumps in. Losing that congressionally enshrined right is a major "consequence[]" all on its own. EPA.Resp.14.

The States are thus likely to succeed on this claim, too.

## II. The States Will Suffer Irreparable Harm Without A Stay.

EPA dismisses the harms from the Rule with the same abandon that it disregards the CAA's cooperative-federalism framework.

The States will experience unrecoverable economic harm. EPA halfheartedly notes that the States' "economic-harm cases did not involve asserted injuries to States," EPA.Resp.15 n.4, but unrecoverable economic

7

harm to States constitutes irreparable harm just the same. *See*, *e.g.*, *Ohio v. Becerra*, 87 F.4th 759, 782–83 (6th Cir. 2023); *District of Columbia. v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 35 (D.D.C. 2020).  Remember: "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment). And EPA and other responders are wrong in saying that the harms the States cite are not already occurring.  Absent a stay, the States must imminently hire hundreds of employees, divert existing employees from working on other programs—weakening state oversight and regulation over other environmental priorities.  Exhibit 12, Stegmann Decl. ¶10; Exhibit 6, Kennedy Decl. ¶¶15–17; Exhibit 7, Semerad Decl. ¶¶16–18.

EPA insists these costs are "ordinary."  But the Rule upended years of the status quo as to methane emissions by imposing the first nationwide emissions guideline for States to reduce methane emissions from existing facilities.  Giving the States just two years to craft implementation plans that regulate hundreds of thousands of existing sources for the first time is unreasonable. *See* Exhibit 18, Attachment to Johnson Decl., Utah Comment Letter dated Jan. 31, 2022, pp. 2, 11; Exhibit 12, Stegmann Decl. ¶9; Exhibit 11, Crowder Decl. ¶9; Exhibit 6, Kennedy Decl. ¶9; Exhibit 7, Semerad Decl. ¶12; Exhibit 13, Hodanbosi Decl. ¶¶9, 18; Exhibit 8, Bird Decl. ¶12; Exhibit 15, Dowd Decl. ¶9.

The costs from the Rule are huge, too. *See* Exhibit 12, Stegmann Decl. ¶¶15–16; Exhibit 11, Crowder Decl. ¶16; Exhibit 13, Hodanbosi Decl. ¶¶9, 13, 18. While EPA dismisses these harms as "overestimate[s]," it has not said why. Instead, EPA has merely pointed to its own estimate of the plan development costs and vaguely suggested that States can "economize the regulatory process." EPA.Resp.15–17. The States are best positioned to know how much they'll need to spend. In truth, States will have to spend millions of dollars on new agency personnel. Exhibit 11, Crowder Decl. ¶¶10, 16; Exhibit 12, Stegmann Decl. ¶¶15, 16; Exhibit 13, Hodanbosi Decl. ¶¶9, 13, 18. And the only way for States to comply with the Rule's deadlines is to start now.

EPA also claims that the States do not dispute "that the presumptive standards are achievable for the vast majority of sources." EPA.Resp.17. This rebuttal ignores States' sovereignty concerns with adopting the presumptive standards. Indeed, it illustrates the conundrum the Rule presents the States. The States must either devote immense resources to develop their own plans or accept EPA's presumptive standards—thereby accepting the upending of the CAA's federalism principles.

The States' sovereignty harms matter. The CAA was designed as "an experiment in cooperative federalism." *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001). By enacting this Rule, EPA has seized control of this experiment by "inver[ting] the federalism principles enshrined" in the CAA. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). Those interests are vital, even

if a State keeps a little room to regulate on its own. *Contra* EPA.Resp.18. For example, in *Kentucky v. Biden*, 23 F.4th 585, 611 n.19 (6th Cir. 2022), state sovereignty was invaded even though the State had some space left to regulate.

In response to direct injuries to the States' economies, Mot.18–19, EPA asserts that the Rule's economic costs (laid out in Exhibits 21–25) are just "thin speculation." EPA.Resp.19. But once again, EPA provides nothing but its own say so for this claim. And it is not just the States asserting that the Rule's economic harms will be pronounced. For example, Continental Resources said it would be be forced "to shut in or curtail existing wells starting May 7th" to comply. Continental.Resp.14.

## III.  The Other Factors Favor A Stay.

Lastly, while EPA emphasizes climate change, it virtually ignores how the "public interest lies in a correct application of" federal law. *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). Even a strong interest in reducing air pollution can't justify an unlawful act. All the more when States are already reducing methane emissions on their own. For example, Virginia's regulatory policy successfully reduced methane emissions by nearly 14% between 2010 and 2019, and other existing rules have yielded reductions of VOCs and copollutants. Exhibit 15, Dowd Decl. ¶17; Exhibit 12, Stegmann Decl. ¶¶19, 20; Exhibit 11, Crowder Decl. ¶20. Because protections like these remain in place the environment will remain protected for the short length of a stay.

10

## CONCLUSION

The Court should stay the Rule.

Respectfully submitted,

GENTNER DRUMMOND
  ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II
 *Solicitor General*
Jennifer L. Lewis
 *Deputy Attorney General*

Office of the Attorney General of
Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov
jennifer.lewis@oag.ok.gov

*Counsel for State of Oklahoma*

PATRICK MORRISEY
  ATTORNEY GENERAL

*/s/ Michael R. Williams*
Lindsay S. See
 *Solicitor General*
Michael R. Williams
 *Principal Deputy Solicitor General*

Office of the Attorney General of
West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
lindsay.s.see@wvago.gov
michael.r.williams@wvago.gov

*Counsel for State of West Virginia*

11

TIM GRIFFIN
  ATTORNEY GENERAL

/s/ *Nicholas J. Bronni*
Nicholas J. Bronni
  *Solicitor General*
Dylan Jacobs
  *Deputy Solicitor General*
Office of the Arkansas Attorney
General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-2007
Nicholas.Bronni@ArkansasAG.gov
Dylan.Jacobs@ArkansasAG.gov

*Counsel for State of Arkansas*

TREG TAYLOR
  ATTORNEY GENERAL

/s/ *Garrison Todd*
Garrison Todd
  *Assistant Attorney General*
Alaska Department of Law
1031 W. 4th Ave., Ste. 200
Anchorage, AK 99501
(907) 269-5100
garrison.todd@alaska.gov

*Counsel for State of Alaska*

STEVE MARSHALL
  ATTORNEY GENERAL

/s/ *Edmund G. LaCour Jr.*
Edmund G. LaCour Jr.
  *Solicitor General*
Office of the Attorney General of
Alabama
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for State of Alabama*

ASHLEY MOODY
  ATTORNEY GENERAL

/s/ *Ashley Moody*
Henry C. Whitaker
  *Solicitor General*
James H. Percival
  *Chief of Staff*
Office of the Attorney General of
Florida
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
henry.whitaker@myfloridalegal.com
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

12

CHRISTOPHER M. CARR
  ATTORNEY GENERAL

/s/ *Stephen J. Petrany*
Stephen J. Petrany
  *Solicitor General*
Office of the Attorney General of
Georgia
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for State of Georgia*


THEODORE E. ROKITA
  ATTORNEY GENERAL

/s/ *James A. Barta*
James A. Barta
  *Solicitor General*
Office of the Attorney General of
Indiana
302 W. Washington St.
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for State of Indiana*

RAÚL R. LABRADOR
  ATTORNEY GENERAL

/s/ *Joshua N. Turner*
Joshua N. Turner
  *Chief of Constitutional Litigation
  and Policy*
Alan M. Hurst
  *Solicitor General*
Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
Josh.Turner@ag.idaho.gov
Alan.Hurst@ag.idaho.gov

*Counsel for State of Idaho*


BRENNA BIRD
  ATTORNEY GENERAL

/s/ *Eric H. Wessan*
Eric H. Wessan
  *Solicitor General*
Office of the Attorney General of
Iowa
1305 E. Walnut Street
Des Moines, IA 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for State of Iowa*

13

KRIS KOBACH
  ATTORNEY GENERAL

/s/ *Anthony J. Powell*
Anthony J. Powell
  *Solicitor General*
Kansas Attorney General's Office
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8539
anthony.powell@ag.ks.gov

*Counsel for State of Kansas*


LIZ MURRILL
  ATTORNEY GENERAL

/s/ *J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga
  *Solicitor General*
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
aguinagab@ag.louisiana.gov

*Counsel for State of Louisiana*


RUSSELL COLEMAN
  ATTORNEY GENERAL

/s/ *Matthew F. Kuhn*
Matthew F. Kuhn
  *Solicitor General*
Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, KY 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for the Commonwealth of Kentucky*


LYNN FITCH
  ATTORNEY GENERAL

/s/ *Justin L. Matheny*
Justin L. Matheny
  *Deputy Solicitor General*
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3825
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

14

ANDREW BAILEY
  ATTORNEY GENERAL

/s/ *Joshua M. Divine*
Joshua M. Divine
  *Solicitor General*
Samuel C. Freedlund
  *Deputy Solicitor General*
Missouri Attorney General's Office
207 West High St.
Jefferson City, MO 65101
(573) 751-8870
Josh.Divine@ago.mo.gov
Samuel.Freedlund@ago.mo.gov

*Counsel for State of Missouri*

AUSTIN KNUDSEN
  ATTORNEY GENERAL

/s/ *Christian B. Corrigan*
Christian B. Corrigan
  *Solicitor General*

Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for State of Montana*

MICHAEL T.HILGERS
  ATTORNEY GENERAL

/s/*Grant D. Strobl*
Grant D. Strobl
  *Assistant Solicitor General*
Office of the Attorney General of
Nebraska
2115 State Capitol
Lincoln, NE 68509
(402) 471-2682
Grant.Strobl@nebraska.gov

*Counsel for State of Nebraska*

DREW H.WRIGLEY
  ATTORNEY GENERAL

/s/ *Philip Axt*
Philip Axt
  *Solicitor General*
Office of Attorney General of
North Dakota
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for State of North Dakota*

15

DAVE YOST
 ATTORNEY GENERAL

/s/ *T. Elliot Gaiser*
T. Elliot Gaiser*
 *Solicitor General*
 *Counsel of record*
Mathura J. Sridharan
 *Deputy Solicitor General*
Ohio Attorney General's Office
30 E. Broad St., 17th Floor
Columbus, OH 43215
(614) 466-8980
Thomas.Gaiser@OhioAGO.gov

*Counsel for State of Ohio*

ALAN WILSON
 ATTORNEY GENERAL

Robert D. Cook
 *Solicitor General*
J. Emory Smith, Jr.
 *Deputy Solicitor General*
Thomas T. Hydrick
 *Assistant Deputy Solicitor General*

/s/ *Joseph D. Spate*
Joseph D. Spate
 *Assistant Deputy Solicitor General*
Office of the Attorney General of
South Carolina
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for State of South Carolina*

16

JONATHAN SKRMETTI
  ATTORNEY GENERAL AND
  REPORTER

/s/ *Steven J. Griffin*
Steven J. Griffin
  *Senior Counsel for Strategic
  Litigation and Assistant
  Solicitor General*
Tennessee Attorney General's
Office
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
Steven.Griffin@ag.tn.gov

*Counsel for State of Tennessee*

SEAN D. REYES
  ATTORNEY GENERAL

/s/ *Christopher A. Bates*
Christopher A. Bates
  *Deputy Solicitor General*
Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
chrisbates@agutah.gov

*Counsel for State of Utah*

JASON S. MIYARES
  ATTORNEY GENERAL

/s/ *Kevin M. Gallagher*
Kevin M. Gallagher
  *Principal Deputy Solicitor
General*
Virginia Attorney General's Office
202 North 9th Street
Richmond, VA 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for Commonwealth of
Virginia*

BRIDGET HILL
  ATTORNEY GENERAL

/s/ *D. David DeWald*
D. David DeWald
  *Deputy Attorney General*
Office of the Attorney General of
Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
david.dewald@wyo.gov

*Counsel for State of Wyoming*

ARIZONA LEGISLATURE

WARREN PETERSEN
PRESIDENT OF THE ARIZONA
STATE SENATE

BEN TOMA
SPEAKER OF THE ARIZONA
HOUSE OF REPRESENTATIVES

By counsel:

By counsel:

/s/ Brunn (Beau) W. Roysden III
Brunn (Beau) W. Roysden III
(DC Cir. Bar No. 64493)
FUSION LAW, PLLC
7600 N. 15th St., Suite 150
Phoenix, Arizona 85020
beau@fusion.law
(602) 315-7545

/s/ Brunn (Beau) W. Roysden III
Brunn (Beau) W. Roysden III
(DC Cir. Bar No. 64493)
FUSION LAW, PLLC
7600 N. 15th St., Suite 150
Phoenix, Arizona 85020
beau@fusion.law
(602) 315-7545

*Counsel for President of the
Arizona State Senate Warren
Petersen*

*Counsel for Speaker of the Arizona
House of Representatives Ben Toma*

Dated: May 13, 2024

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,584 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II